UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

DERRICK DEWAYNE GRANT #131548          CIVIL ACTION NO. 16-cv-0077

VERSUS                                  JUDGE ELIZABETH FOOTE

N. BURL CAIN, ET AL.                    MAGISTRATE JUDGE HORNSBY

_____

## MEMORANDUM ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge. [Record Document 19]. Having thoroughly reviewed the record and the written objections filed, the Court **CONCURS** with the Report and Recommendation with the exception of the findings regarding the prosecution's comments on Petitioner's post-arrest silence. With respect to the post-arrest silence, the Court **CONCURS** in the result, but finds that the Magistrate Judge only addressed the references that the prosecution made during cross-examination about Petitioner's pre-arrest silence and did not address the references that the prosecution made during closing argument about Petitioner's post-arrest silence.

As set forth in the Report and Recommendation, Petitioner was tried and convicted of attempted second-degree murder for the shooting of Michael Parker. Record Document 19, p. 4. He allegedly carried out this shooting with two other men, William Hall ("Hall") and Ira Ross ("Ross"). *Id.* at 2–3. At trial, Petitioner chose to testify and claimed for the first time that an individual named Jackie Sanders ("Sanders") was the third person involved in the shooting with Hall and Ross. *Id.* at 11–12. Petitioner stated that he was at home watching television when he heard Hall yelling outside his back door. *Id.* at 11. Hall was asking Ross, "Where is Little Jackie?" in reference to Sanders. *Id.* Hall and Ross told Petitioner that the police were searching for them

1

and asked Petitioner not to let the officers in the house. *Id.* at 12. When the police officers approached the house, Petitioner gave them permission to come in and search. *Id.* Petitioner, Hall, and Ross were placed on the front porch during the search and were advised of their *Miranda* rights after the officers found incriminating evidence inside the house. *Id.* at 12–13.

On direct examination, defense counsel asked Petitioner why he consented to the search. *Id.* at 12. Petitioner replied, "Because I just, I mean --, I mean, how can you not tell the police?" *Id.* On cross-examination, the prosecutor asked Petitioner why he did not tell police about Sanders's involvement when they initially requested permission to search his house. *Id.* The prosecutor revisited this issue in his closing rebuttal, stating:

> Who in the world would be the most interested in getting to the bottom of it? An innocent man. An innocent man would stand before the police and go, "Look, I didn't have anything to do with it. These guys just came in. They just did a murder. I don't want to be involved in this. I don't want to do anything. *You know, y'all have arrested me. Y'all have taken me to jail, accused me of killing somebody; but I'm going to be quiet about it.* I'll tell you what. We'll come up with this whole defense and, you know, use the oldest defense in the world and blame it on the dead guy. And I'm going to spring it on the jury the day of trial." That's just stupid. That's all that is. And that's exactly what they've given you.

*Id.* at 13; Record Document 18-6, p. 225 (emphasis added). Petitioner asserts that these references to his post-arrest silence violated the Supreme Court's holding in *Doyle v. Ohio*, 426 U.S. 610 (1976) and therefore constitute a due process violation. Record Document 1-1, p. 36.

**I.     Presence of a *Doyle* Error**

In *Doyle v. Ohio*, the Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U.S. at 619. The Court reasoned that an arrestee's silence after being given *Miranda* warnings might represent nothing more than his exercise of the right to remain silent. *Id.* at 617. Therefore, it would be a deprivation of due process

2

to allow that silence to be used to impeach an exculpatory story that was offered for the first time at trial. *Id.* at 618.

At Petitioner's trial, the prosecution referenced his failure to tell the police about Sanders's involvement both before and after he was arrested. In *Jenkins v. Anderson*, the Supreme Court held that the use of a criminal defendant's pre-arrest, and therefore pre-*Miranda*, silence for impeachment purposes does not violate the Fourteenth Amendment. 447 U.S. 231, 240 (1980). When a defendant elects to testify on his own behalf, a reference to his pre-arrest silence does not impose the fundamental unfairness represented by a reference to his post-arrest silence. *Id.* In the instant case, the state court and the Report and Recommendation both found that the prosecutor's cross-examination of Petitioner did not represent a *Doyle* violation because the questions concerned Petitioner's silence after the police officers requested to search his house, but before he was arrested and received *Miranda* warnings. *State v. Grant*, No. 47,365-KA (La. App. 2 Cir. 9/20/12); 105 So. 3d 81, 89; Record Document 19, p. 15. The Court agrees with the conclusion that the prosecutor's questions during cross-examination did not violate *Doyle* because they dealt with Petitioner's pre-arrest silence. However, the Court finds that the state court and the Report and Recommendation did not address the prosecutor's comments in closing arguments about Petitioner's post-arrest silence.[1]

During his rebuttal close, the prosecutor hypothesized about what Petitioner's thought process might have been when he failed to tell the police that it was Sanders, and not him, who was the third man involved in the shooting. Record Document 18-6, p. 225. The prosecutor said,

---

[1] The state court found that "[e]ven if the state's reference to Sanders was a *Doyle* violation, we find that it was harmless error, given the strong direct and circumstantial evidence establishing the defendant's guilt." *Grant*, 105 So. 3d at 92 n.3. This statement fails to address the prosecutor's comments during closing argument.

"You know, y'all have arrested me. Y'all have taken me to jail, accused me of killing somebody; but I'm going to be quiet about it." *Id.* The prosecutor went on to state, "I'll tell you what. We'll come up with this whole defense and, you know, use the oldest defense in the world and blame it on the dead guy." *Id.* The Court finds that these remarks constituted a *Doyle* error because the prosecutor used Petitioner's post-arrest silence to impeach his exculpatory story that Sanders was the third man involved in the shooting. *See Doyle*, 426 U.S. at 619.

## II. Standard of Review

In *Brecht v. Abrahamson*, the Supreme Court held that *Doyle* errors are subject to the *Kotteakos* harmless error standard, which requires a conviction to be overturned when the error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). The petitioner in *Brecht* was convicted of first-degree murder. *Id.* at 624–25. At trial, he took the stand and claimed for the first time that the shooting had been an accident. *Id.* at 624. During cross-examination, the state asked the petitioner if he had told anyone that the shooting was an accident at any point before trial. *Id.* at 625. The state's closing argument also made several references to the petitioner's silence about this exculpatory story. *Id.* The petitioner raised this *Doyle* error on direct appeal, lost at the state supreme court level, and then reasserted the *Doyle* claim via 28 U.S.C. § 2254. *Id.* at 626.

The Court determined that the *Kotteakos* standard should apply to *Doyle* errors on collateral review instead of the more onerous "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967). *Id.* at 623. The Court found that *Doyle* errors fall into a category of constitutional violations known as "trial errors." *Id.* at 629. Trial errors are errors that occur during the presentation of the case and their effect on the trial can be "quantitatively

4

assessed" in the context of the other evidence presented. *Id.* They are distinguishable from structural defects, such as the deprivation of the right to counsel, that infect the entire trial process and require automatic reversal. *Id.* at 629–30. The Court opined that the *Kotteakos* harmless error standard is "better tailored to the nature and purpose of collateral review" under § 2254 than the *Chapman* standard when determining whether habeas relief should be granted based on a trial error. *Id.* at 637–38. The Court held that the prosecutor's comments regarding the petitioner's post-arrest silence did not substantially influence the jury's verdict. *Id.* at 638. The Court based this finding on the relatively small number of references to the petitioner's post-arrest silence throughout the trial, the permissible references to the petitioner's pre-arrest silence that had already been made, and the existence of other evidence against the petitioner. *Id.* at 639. The facts of *Brecht* align closely with the facts of Petitioner's case.

### III. Conclusion

In this case, the prosecution's permissible references to Petitioner's pre-arrest silence, combined with the relatively minor amount of time the prosecutor spent discussing Petitioner's post-arrest silence in his rebuttal close, lead this Court to find that the *Doyle* error was harmless.[2] Like in *Brecht*, the prosecutor's permissible references to Petitioner's pre-arrest silence rendered the references to his post-arrest silence merely cumulative in effect. *Id.* The prosecutor's references to Petitioner's post-arrest silence made up only a small portion of the prosecution's closing

---

[2] The Court notes that in *Chapman v. United States*, 547 F.2d 1240, 1249 (5th Cir. 1977), the Fifth Circuit held that a *Doyle* error occurring under circumstances similar to this case constituted reversible error. ("When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous."). However, the Court finds that the Supreme Court's later holding in *Brecht*, that *Doyle* errors are reversible only if they "had substantial and injurious effect or influence in determining the jury's verdict," implicitly supersedes this Fifth Circuit precedent in the context of this case. *See Brecht*, 507 U.S. at 623.

5

argument and rebuttal.[3] *Id.* Additionally, the state presented a significant amount of evidence against Petitioner, including the testimony of Hall, who identified Petitioner as one of the shooters and provided several other details about the shooting that were corroborated by other witnesses. *See* Record Documents 18-5, pp. 202–07 & 209–21; 18-6, pp. 98–107. Accordingly, the Court holds that the *Doyle* error in this case did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623.

Therefore, it is ordered that Grant's Petition for Writ of Habeas Corpus is **DENIED**.

Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court has considered the record in this case and the standard set forth in § 2253. Although the Court denies the Petition for Writ of Habeas Corpus, the Court **GRANTS** a certificate of appealability because the applicant has made a substantial showing of the denial of a constitutional right.

A judgment consistent with this ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 21st day of March, 2019.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

---

[3] The prosecution's closing argument and rebuttal make up approximately thirty-two pages of the trial transcript. The prosecution's reference to Petitioner's post-arrest silence occupies ten lines of one page. *See* Record Document 18-6, pp. 180–97, 212–27.